## MAR–DE–PASSY CORPORATION v. UNITED STATES.

No. 42694.

Court of Claims.

Nov. 12, 1940.

Supplemental Opinion March 3, 1941.

150

Harry S. Hall, of New York City (George Gordon Battle, of New York City, on the brief), for plaintiff.

Titian W. Johnson, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and GREEN, Judges.

GREEN, Judge.

This suit is brought by the plaintiff to recover damages for the alleged infringement of patent No. 1,599,311, granted to the plaintiff September 6, 1926, for a marine vessel, upon an application originally filed June 14, 1923. The petition alleges infringement because of the application to certain warships of the United States of a structure extraneous to the original hull of the ships and placed thereon primarily for protection against torpedoes.

The structure used serves as a protective armor and in this country is generally referred to as a "blister" or "blisters," although sometimes called "bulges," and plaintiff's counsel terms it a "bulkhead." These blisters, as used on defendant's

vessels, comprise an outer metallic shell shaped for adjustment to the sides of the vessel, leaving an air space between the outer skin and the hull. The upper edges were secured to the hull a suitable distance above the water line and at the lower edges were attached to the region of the ship known as the "turn of the bilge," which is where the ship's sides join the bottom. In the particular case before us this additional protection was placed on the ships after they were built and in commission, and covered the most vital portions of the hull upon the sides, but did not in any case extend under or surround the bottom of the normal hull. They were streamlined fore and aft, and so constructed as to interfere as little as possible with the operation of the ship.

The plaintiff's patent in suit is for a marine vessel constructed, as to the hull, in accordance with its claims and does not rest upon any one claim alone. Four claims are made in the patent, the last three in connection with the first and including it. These claims are as follows:

"1. A marine vessel comprising a hull, and a longitudinal laterally extending exterior bulkhead structure thereon surrounding the bottom and part of the sides of said hull, said bulkhead structure having a bottom rising from its bow end to its stern end, said bottom being shaped to provide a longitudinal and inwardly extending recess.

"2. In a marine vessel according to claim 1, the bottom of said bulkhead structure merging into the bottom region of the bow portion and the bottom region of the stern portion of said hull.

"3. In a marine vessel according to claim 1, the bottom of said hull being substantially flat throughout the midship body.

"4. In a marine vessel according to claim 1, said bulkhead structure extending over part of the bow portion and the midship body of said hull."

The defendant contends that the patent in suit is invalid, but even if valid, is not infringed, and any use made by the defendant of the so-called blisters or bulkhead structure is, so far as any rights of the plaintiff, or the rights of anyone else, are concerned, justified by the prior art open to the free use of the entire public.

The evidence was submitted to a Commissioner of this court and the findings made by him are substantially to the effect that the government structures complained of do not correspond to the claims of the patent in suit and therefore there is no infringement. The plaintiff excepts to these findings, the effect of which would be to deny any recovery and make it unnecessary to determine whether the patent accomplished anything useful and was valid. The main issue in the case is as to the correctness of the findings, and this has made it necessary for us to consider the testimony introduced before the commissioner.

The argument made on behalf of the plaintiff, and the exceptions it takes to the report of the commissioner are so voluminous that if we reviewed each feature thereof in corresponding manner the opinion would be unduly extended. As we view the case this is not at all necessary as the judgment of the court must be controlled by its conclusions with reference to a few facts which are vital to plaintiff's case. A study of the evidence taken before the commissioner of the court satisfies us that the findings made are substantially correct. We have made some changes in verbiage in the interest of clarity, and to avoid some of the objections made by counsel for plaintiff upon matters which we consider nonessential.

There is attached to the patent, and referred to therein, explanatory drawings showing diagrams of the hull of the vessel constructed in accordance with the specifications of the patent. These drawings are reproduced on a smaller scale and inserted in the findings under the caption "Patent Drawings." The argument made on behalf of the plaintiff assumes that the patent is a combination of the features described in the claims and specifications. It appears to us rather as an aggregation, each feature having its own specific functions independent of the others but it is not necessary to rest the decision on this point as the findings show definitely that the defendant made no use of such a combination as is described in the specifications of plaintiff's patent.

There are two outstanding features of plaintiff's patent as shown by its Claim No. 1.

First, that it comprises a "bulkhead structure *surrounding the bottom* and part of the sides of said hull, the bulkhead structure having a bottom rising from its bow end to its stern end" (Italics supplied), and

Second, "said bottom being shaped to provide a longitudinal and inwardly extending recess."

There can be no question under the evidence but that the "blisters" used by defendant did not surround the bottom of the hulls of its vessels or cover any appreciable part of it, and the findings so state. Also it appears that in the structure of defendant's vessels the bottom had no bulkhead structure, and did not rise from its bow end to its stern end, there being merely a rise at the stern to make room for the propellers. It further appears definitely from the findings that the bottom of the hull of defendant's vessel was not shaped to provide a longitudinal and inwardly extending recess. Plaintiff complains because the findings state that this last provision requires that the recess should be centrally located. We do not regard this of special importance because the evidence shows that the only recess on the hull of the "Mississippi" and other vessels of defendant was a joint at the point of the adjustment or fastening of the blister to the hull, making a slight channel which ran the length of the blister where it is attached to the hull. These channels perform no function in respect to the operation or performance of the ship. They were merely incidental to the fastening of the blister by appropriate means to the ship's hull. Only one "recess" is specified in the patent. That it must be central, we think, is shown by the fact that it is described as "inwardly extending," and if it were not central it would make the sides of the hull unequal and lopsided. This construction of the language used in the patent is made positive and definite by figures 6 and 7 of the patent drawings which show a centrally located recess in the bulkhead surrounding the bottom. We repeat that defendant's structure had no bulkhead surrounding the bottom, had no recess whatever on its bottom, and in respect to the bottom generally did not conform to the design contemplated by plaintiff's patent. This will further appear by an examination of the drawings in Plaintiff's Exhibit 8, set out under that caption in the findings. A comparison of figures 3, 4, 5, and 6 of exhibit 8, with figures 5, 6, 7, and 8 of the drawings attached to the patent, show how utterly dissimilar was the structure used by defendant to that proposed by the plaintiff.

The findings also show that there is nothing new in plaintiff's patent unless it be in the features that were not used by the defendant. In Finding 22 reference is made to a number of patents intended to protect a ship's hull from explosives by means of an outer belt of metal used in a manner corresponding to the blisters placed upon defendant's war vessels. These devices are so fully described in the finding that it makes any further description unnecessary here. There is no controversy as to Finding 22, and the facts set out therein fully justify the statement made in Finding 23 that "the prior-art patents and publications set forth in Finding 22 establish the fact that more than two years prior to the application date of the patent in suit, June 14, 1923, the use of blisters exterior to the hull of a vessel for protection from the explosive effect of torpedoes and mines was well known to those skilled in the art of naval warfare. That such blisters or bulkheads included structures entirely surrounding the bottom and partially covering the sides of the hulls to which they were attached. That the blisters were in many cases compartmented and used for storage reservoirs for fuel or water. Instances of disclosure in the prior art whereby increased buoyancy of the vessel and decreased draft are obtained by the addition of blisters are manifest." This finding also calls attention to the fact that plaintiff's hull form is portrayed in the British patent to Von Köppen. Plaintiff excepts to this finding. We think it is fully supported by the evidence, but only that part referring to structures partially covering the sides of the hulls to which they were attached is embodied in our decision. The bottoms of defendant's vessels did not conform to the description in either the plaintiff's patent or that of Von Köppen.

The findings as a whole make it unnecessary for us to determine the usefulness of plaintiff's patent and its validity generally. They are abundantly supported by the evidence and definitely show that the defendant made no use of the combination claimed by plaintiff and that all it did use in modernizing its ships was old in the art of shipbuilding, and antedated plaintiff's patent several years. It is clear regardless of any question in relation to the validity of the patent, that there was no infringement on the part of the defendant.

It is argued on behalf of plaintiff that the evidence shows a deep channel or recess where the blister joined the hull of the ship. An examination of the diagrams shows that the utmost depth of this recess could not exceed the thickness of the blister where it was fastened to the ship's hull.

A considerable portion of the line of the blister was entirely above the bottom but the lower part in the center tapered inwardly until it came in contact with the bilge. The only recess created was by the contact with the outer shell and presumably its depth would be only a few inches at most. We mention this matter only to show that this part of plaintiff's argument was specially considered.

What we have said above makes it unnecessary to refer to much that is said in the argument made for plaintiff, but some matters upon which counsel for plaintiff lays special stress may properly be mentioned although they bear only inferentially on the ultimate decision in the case. As a matter of course the defendant's naval constructors in adding the blisters endeavored to so shape them that they would interfere as little as possible with the speed of the ship. It also follows as a matter of common knowledge that increasing the displacement of the ship by increasing the width of its hull would decrease its draft, but it does not by any means follow that the speed of the vessel was thereby increased. The evidence does show that in the course of modernizing its battleships, on subsequent trials, it was found that the speed of two was slightly increased, but the modernization included such matters as changes from coal burners to oil burners, replacing old boilers with new, and other matters considered necessary to bring the ships up to modern standards. Just what changes were made in the vessels, the speed of which was increased, does not appear from the evidence, and taking the evidence as a whole it fails to show that the increase in speed was caused by the addition of the blisters and there is no satisfactory evidence to explain how the use or addition of blisters would increase the speed of the vessel.

It is argued on behalf of plaintiff, in substance, that the great importance of plaintiff's patent justifies its being broadly construed. If by the use of plaintiff's patent on ships not only will the speed of the vessel be increased and its carrying capacity and stability made greater, then the patent is highly important and extremely valuable; but it would also follow in such case that every ship constructor in the world would want to use it and its inventor would reap an almost incalculable profit. On the contrary, an examination of

the evidence fails to show a single instance during the years since it was issued that any use was made of it. The direct evidence to show what it will accomplish is confined entirely to a small model. The theory upon which it was based is contradicted by a naval expert. If any ship constructor had even thought that plaintiff's patent was worth a trial there would have been some practical demonstration of its value by a ship actually constructed and operated, which, if favorable to the plaintiff, would have been shown in evidence. Although this fact is not necessary to our decision, we think it quite significant in considering the extreme claims made in the argument in relation to the value of the patent and the alleged infringement.

The petition of plaintiff must be dismissed. It is so ordered.

WHALEY, Chief Justice, and LITTLETON, Judge, concur.

WHITAKER, Judge, took no part in the decision of this case.

Supplemental Opinion on Motion for New Trial.

GREEN, Judge.

The motion for a new trial contains some surprising statements, both with reference to the evidence and to what is contained in the court's opinion.

It is said that the case "is highly technical, involving intricate mathematical theories of ship design easily understood only by experts." On the contrary, no testimony was given which was even claimed to be based on any mathematical calculation. No complicated apparatus was involved, as in many cases before this court; and no delicately constructed parts existed. The meaning of the evidence throughout is very clear except when it is presented in a form which differs from that which is set forth in the testimony. The court gave more than usual time to the plaintiff in hearing plaintiff's case, and counsel was in no way unduly restricted in presenting it.

It is specially urged that the court denied the inventor the benefit of the patent law doctrine of equivalency.

There is no principle of law with reference to patents that is more often discussed or better understood than this

doctrine, and it is true that the court refused to apply it in the case before us; but while it is well recognized that in a patent of a combination, infringement is not avoided by the use of an equivalent for some part of the combination, it is never applied when there is an entire omission of a definite part of the combination without anything being used to function in its place, as appeared in the instant case. This point is discussed elaborately in the opinion wherein reference to Finding 19 is made, which shows that no bulkhead structure surrounding the bottom of the hull and having a bottom rising from its bow to its stern end was found on defendant's battleships; or any bulkhead structure shaped to provide a longitudinal and inwardly extending recess in its bottom. This part of the finding, with its added explanation, is fully supported by the evidence, as is demonstrated in that part of the opinion which refers to Figs. 6 and 7 of the patent drawings (set out in the findings).

There was no equivalent to plaintiff's use of a bulkhead surrounding the bottom, nor was there any recess whatever in the bottom of defendant's ships.

The amendments which the plaintiff asks to the findings are not based on the evidence but are contrary to it, so far as anything material to the case is concerned. This is illustrated in the first amendment which plaintiff asks in its motion for a new trial (new Finding 24). The defendant did use a hull and a blister attached to the hull, but the blister used, as is shown plainly by Fig. 1 of plaintiff's Exhibit 8 (set out in the findings), was applied only to the sides of the hull. The blister in the ordinary sense had no bottom, as it was tapered off to meet the hull on the lower part. The bottom of the hull on defendant's vessels *was not changed at all.* The lower line of the blister from near the center of the hull sloped in two ways, upward towards the bow and upward towards the stern. The bottom of the ship was flat and did not slope in any direction. The claims of the patent required the bottom to rise from its bow end to its stern and that the *bottom* should be sloping and shaped to provide a longitudinal and inwardly extending recess, all being shown very plainly by Figs. 1 and 7 of the patent drawings; Fig. 1 showing the slope of the bottom of the hull and Fig. 7, which is a cross section of the hull, showing the

form of the bulkhead on the bottom of the hull in plaintiff's patent, making therein (in the language of the patent) "a longitudinal and inwardly extending recess." The defendant had nothing whatever as a substitute for this feature of the plaintiff's patent.

Plaintiff claims there was a streamline structure rising from the stern. A streamline structure is not mentioned in the patent, but of course in attaching the blister its edges would be sloped so as to reduce obstruction as the ship passed through the water. The hulls of all ships in which speed is a special object are streamlined. Plaintiff says the streamline rose from the bow to the stern, but, as stated above, the lower line of the blister rose from the central part of the ship to the bow and also to the stern, and the bottom of the hull was not so shaped as to provide a recess or a slope. Nothing whatever was changed on defendant's ships with reference to the bottom of the hull. The only recess was a very slight one where the lower part of the blister was attached to the side of the ship without extending over the bottom.

Counsel for plaintiff states that an order of call was made upon defendant to submit details of the reconstruction of the underwater body of the hulls of the ships which was refused on the ground that it called for confidential matter. The plaintiff now complains of this action and contends that the court should presume that there is an identity between plaintiff's structure and that of defendant; but the Navy furnished drawings showing the lines of the outer form of the hulls of these battleships. These drawings as introduced in evidence (plaintiff's Exhibit 8) were on a large scale, and as reproduced in Finding 9 the scale is very much smaller (about one-tenth of that of the drawings). Even on this reduced scale, the drawings are quite plain and show clearly the form and shape of the outer hull of the vessels including the bottoms, as well as the form and location of the blisters which were added. This is all which is material. The outer form and not the construction of the interior is the feature upon which the patent is based.

In modernizing the defendant's vessels, an effort was made to increase the speed by putting in new boilers and oil burners. The effect was, in the case of two vessels,

to slightly increase the speed, notwithstanding the addition of the blisters, but there was no evidence that the speed of the vessels was increased by the addition of the blisters. The testimony of defendant's expert was to the contrary, and there was no evidence that the purpose of defendant in adding the blisters was to increase the speed. Where there was a conflict in the evidence we found the testimony given on the part of the defendant the more reasonable and credible.

It would unduly extend this opinion to discuss further all of the matters to which counsel for plaintiff calls attention and state what we find to be the real facts in the case as shown by the evidence. The testimony has been gone over by a commissioner of this court, then again by the court in preparing the opinion, and still once more in ruling upon this motion, and we see no error in the findings as originally made.

■ There is another feature of the case which furnishes a decisive answer to the plaintiff's claims. No error is assigned in the argument for a new trial, and none can be claimed in Findings 22 and 23, because there is not the slightest dispute as to the facts stated. They show that all that defendant used in modernizing its ships was old in the art of shipbuilding and antedated plaintiff's patent by several years. Plaintiff asks a finding to the effect that in 1919 a meeting of naval experts concluded that the question of how to best protect ships from attacks by torpedo mines and aerial bombs had not then been solved. This is immaterial. In view of what has happened in the war now taking place, another meeting of these experts at the present time would probably result in the same conclusion, but in any event it cannot be reasonably contended that plaintiff's patent showed anything new with reference to the *protection* of war vessels from such attacks.

The motion for oral argument and for a new trial must be overruled, and it is so ordered.

WHALEY, Chief Justice, and LITTLETON, Judge, concur.

WHITAKER, Judge, took no part in the decision of this case.